UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIELLE JANETTE
SPINAZZOLA,

    Plaintiff,

v.                                                 Case No. 8:24-cv-2307-AAS

FRANK BISIGNANO,
**Commissioner of the Social
Security Administration,**[1]

    Defendant.
_____/

## ORDER

Danielle Janette Spinazzola requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including the transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the parties' memoranda, the Commissioner's decision is **AFFIRMED**.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as the defendant in this suit. No further action needs to be taken to continue this suit through the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

I.   PROCEDURAL HISTORY

Ms. Spinazzola applied for SSI on DIB on March 12, 2021, with an alleged disability onset date of January 1, 2020.[2] (Tr. 79, 88, 218–27). Disability examiners denied Ms. Spinazzola's application initially and on reconsideration. (Tr. 126–35, 138–45). Ms. Spinazzola requested and received a hearing before an ALJ. (Tr. 146–47).

The ALJ held a hearing on September 26, 2023, and issued a decision finding Ms. Spinazzola not disabled on December 1, 2023. (Tr. 20–37, 46–78). Ms. Spinazzola requested the Appeals Council's review of the ALJ's hearing decision. (Tr. 212–14). The Appeals Council denied Ms. Spinazzola's request for review on July 10, 2024, making the ALJ's decision final. (Tr. 7–12). Ms. Spinazzola now requests review of the ALJ's final decision. (Doc. 1).

II.   NATURE OF DISABILITY CLAIM

A. Background

Ms. Spinazzola was 48 years old on her alleged disability onset date. (Tr. 48). Ms. Spinazzola has a high school education and past relevant work as a dog groomer. (Tr. 55, 243). Ms. Spinazzola alleged disability due to carpal

---

[2] In her SSI application, Ms. Spinazzola alleged her disability began on December 10, 2019, and in her DIB application, she alleged it began on January 1, 2020 (Tr. 218, 224). The ALJ used January 1, 2020 as the disability onset date. (Tr. 27).

tunnel syndrome, a trigger finger in each hand, back issues, and a knee issue. (Tr. 242).

### B. Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a disability claim.[3] 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is engaged in substantial gainful activity,[4] she is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit her physical or mental ability to perform basic work activities, she has no severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC). *Id.* Fifth, if a

---

[3] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[4] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. §§ 404.1572, 416.972.

claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing work that exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The ALJ found Ms. Spinazzola had not engaged in substantial gainful activity since January 1, 2020, her alleged disability onset date. (Tr. 27). The ALJ found Ms. Spinazzola had these severe impairments: medial meniscal tear of the right knee, status-post surgical repair; carpal tunnel syndrome of the right upper extremity, status-post bilateral release surgeries in 2021; degenerative disc disease of the lumbar spine, status-post laminectomy; and degenerative disc disease of the cervical spine. (*Id.*). However, the ALJ found Ms. Spinazzola did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment in the Listings. (Tr. 29).

The ALJ determined Ms. Spinazzola had the RFC to perform light work,[5] with these additional limitations:

> no climbing, kneeling, or crawling; occasional overhead reaching

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

> bilaterally but no limitation in reaching in any other direction of plane; no more than frequent handling, fingering, and feeling, bilaterally; and no more than occasional exposure to extreme cold and industrial vibration.

(*Id.*). The ALJ considered Ms. Spinazzola's RFC and a vocational expert's (VE) testimony and concluded she could not perform her past relevant work. (Tr. 35). However, the ALJ concluded there were other jobs existing in significant numbers in the national economy that Ms. Spinazzola could perform. (Tr. 36). Specifically, Ms. Spinazzola could perform the jobs of mailroom clerk, merchandise marker, and office helper. (*Id.*). The ALJ thus concluded Ms. Spinazzola was not disabled at any time from January 1, 2020, through the date of the decision. (Tr. 37).

## III.  ANALYSIS

### A.  Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations

omitted). The Supreme Court explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B.   Issues on Appeal

Ms. Spinazzola raises these two issues on appeal: (1) whether substantial evidence supports the ALJ's evaluation of the medical opinion evidence; and (2) whether substantial evidence supports the ALJ's evaluation of Ms. Spinazzola's subjective complaints.

#### 1. Whether substantial evidence supports the ALJ's evaluation of the medical opinion evidence.

Ms. Spinazzola argues the ALJ "failed to properly evaluate the medical

opinion evidence in determining [Ms. Spinazzola's] manipulative limitations." (Doc. 13, pp. 22–30; Doc. 18). Specifically, Ms. Spinazzola challenges the ALJ's evaluation of the opinions of Ioannis Pappou, M.D., Ms. Spinazzola's treatment provider who performed various procedures on her hands and wrists. (*Id.*). In response, the Commissioner contends substantial evidence supports the ALJ's assessment of the opinion evidence of record, including Dr. Pappou's opinions. (Doc. 17, pp. 5–14).

As part of the RFC determination, the ALJ considers opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). A medical opinion is a statement from a medical source about what an individual can still do despite his or her impairments. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The regulations require the ALJ to explain how persuasive he or she found each opinion or prior administrative finding of record; in doing so, the ALJ must explain how the supportability and consistency factors were considered. 20 C.F.R. §§ 404.1520c, 416.920c. The "supportability" factor refers to the support provided by the source issuing the opinion, as it is defined in the regulations as relevant objective evidence and explanations "provided by a medical source . . . to support his or her medical opinion." 20 C.F.R §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" refers to a comparison with other items in the record because it is defined as the consideration of "evidence from other medical sources and nonmedical sources." 20 C.F.R §§ 404.1520c(c)(2), 416.920c(c)(2).

7

The ALJ found Dr. Pappou's opinions "mostly unpersuasive." (Tr. 34). At issue is Dr. Pappou's medical source statement dated April 28, 2021.[6] (Tr. 568–72). In the medical source statement, Dr. Pappou diagnosed Ms. Spinazzola with severe carpal tunnel syndrome with "permanent [and] irreparable nerve damage," as well as trigger finger of the right thumb and left ring finger. (Tr. 568). Dr. Pappou noted Ms. Spinazzola's symptoms included pain, numbness, tingling, weakness, and clumsiness in her hands. (Tr. 569). Dr. Pappou also noted Ms. Spinazzola had multiple surgeries for carpal tunnel syndrome and trigger finger. (*Id.*). Dr. Pappou opined Ms. Spinazzola could sit, stand, or walk for less than an hour a day and could never lift any weight. (Tr. 570, 571).

Regarding manipulative and reaching limitations, Dr. Pappou opined Ms. Spinazzola could "never/rarely" grasp, turn, and twist objects, use her hands and fingers for fine manipulation, or use her arms for reaching (including overhead). (Tr. 571). Dr. Pappou opined Ms. Spinazzola was unable to work, would need to take unscheduled breaks, would miss work more than three times per month, and supported her claim of "permanent disability" due to bilateral carpal tunnel syndrome with permanent nerve damage. (Tr. 571, 572).

---

[6] Two of Dr. Pappou's statements were not accepted by the ALJ because they did not comply with the five-day notice requirement. (Tr. 24); *See* 20 C.F.R. §§ 404.935, 416.1435. (Tr. 24).

In finding Dr. Pappou's opinion mostly unpersuasive, the ALJ addressed the required supportability and consistency factors. (Tr. 34). As for supportability, the ALJ stated Dr. Pappou's opinions were not adequately explained. (*Id.*). For example, Dr. Pappou opined Ms. Spinazzola would miss work more than three times per month but did not explain what specific symptoms or treatment demands caused this extreme limitation. (*Id.*). The ALJ also noted Dr. Pappou's opinion that Ms. Spinazzola was totally disabled was an issue reserved for the Commissioner. (Tr. 34); *See Glasby v. Soc. Sec. Admin, Comm'r*, No. 21-12093, 2022 WL 1214015, at *3 (11th Cir. Apr. 25, 2022) (holding the ALJ correctly applied the new regulations when finding a statement about whether the claimant was disabled "was an issue reserved to the Commissioner").

The ALJ adequately addressed the consistency factor. (Tr. 34). For example, the ALJ referenced findings from Stephen Christensen, M.D.'s consultative examination in January 2023.[7] (Tr. 664–71). Dr. Christensen noted Ms. Spinazzola exhibited full upper body strength, including wrist flexion, wrist extension, finger abduction, and hand grip. (Tr. 666). Ms.

---

[7] The court may look to evidence in other portions of the decision for additional justification for the ALJ's conclusions. *See Rodriguez v. Comm'r of Soc. Sec.*, No. 6:20-cv-1674-MRM, 2022 WL 807443, *6-7 (M.D. Fla. Mar. 17, 2022) (affirming the ALJ's decision when the ALJ found opinions "not persuasive because they are not consistent with or supported by the medical record" and discussed that evidence earlier).

Spinazzola's sensation was intact to light touch throughout the examination. (Tr. 667). Dr. Christensen opined Ms. Spinazzola could lift, carry, and handle light objects and perform fine motor skills such as opening doors, buttoning shirts, and manipulating a coin. (*Id.*). Dr. Christensen also noted Ms. Spinazzola exhibited a normal range of motion in the upper extremities. (Tr. 670).

Similarly, as the ALJ stated, the record reflects that on various occasions Ms. Spinazzola exhibited full strength in her upper extremities, normal motor function of the upper extremities, and denied numbness, tingling, or weakness in her upper extremities, and displayed a normal range of motion. (*See* Tr. 34, 345, 397, 437, 756, 857, 862, 868, 927, 932). The ALJ also discussed a diagnostic image of Ms. Spinazzola's right shoulder that revealed only mild joint arthritis. (Tr. 31, 1073). These records are inconsistent with Dr. Pappou's opinion that Ms. Spinazzola could "never/rarely" reach in any direction. (Tr. 571).

Ms. Spinazzola contends that "[i]nstead of considering the . . . longitudinal treatment record, the ALJ focused on examination findings reported by one-time consultant Dr. Christensen to conclude Dr. Pappou's opinions are inconsistent with other evidence." (Doc. 13, p. 26). However, as stated above, the ALJ considered Dr. Christensen's examination as evidence that conflicted Dr. Pappou's opinions. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of

10

conflicting medical evidence. The trier of fact has the duty to resolve that conflict."); *see also Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005))).

Ms. Spinazzola further argues Dr. Christensen's report was "not properly signed" because it includes an electronic signature. (Doc. 13, p. 26). In support of this argument, Ms. Spinazzola cites 20 C.F.R. § 416.919n(e).[8] However, in addition to a digital signature, Dr. Christensen's handwritten signature is also affixed to his report. (Tr. 671, 668).

As to Ms. Spinazzola's manipulative limitations, Ms. Spinazzola argues the ALJ erred in considering Ms. Spinazzola's improvement with carpal tunnel surgery in rejecting Dr. Pappou's opinions about Ms. Spinazzola's manipulative limitations. (Doc. 13, p. 27). However, the ALJ did not conclude Ms. Spinazzola could work only because her condition improved with treatment. Instead, the ALJ cited evidence of improvement in the context of

---

[8] 20 C.F.R. § 416.919n(e) provides: "All consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination. This attests to the fact that the medical source doing the examination or testing is solely responsible for the report contents and for the conclusions, explanations or comments provided with respect to the history, examination and evaluation of laboratory test results. The signature of the medical source on a report annotated "not proofed" or "dictated but not read" is not acceptable. A rubber stamp signature of a medical source or the medical source's signature entered by any other person is not acceptable."

11

Dr. Pappou's limitations being inconsistent with the record. In addition, although the ALJ did not adopt the opinions in Jared Salinksy, M.D.'s May 2023 medical source statement, or the prior administrative findings of the state agency medical consultants, the ALJ found Ms. Spinazzola more limited in terms of manipulative limitations than both Dr. Salinsky and one of the state agency medical consultants, both of whom determined Ms. Spinazzola had no manipulative limitations. (Tr. 105, 908); See *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007) (indicating the ALJ did not need to rely on a doctor's opinion to support the finding of the claimant's RFC with substantial evidence).

The ALJ properly assessed Dr. Pappou's opinions and addressed the supportability and consistency factors. Substantial evidence supports the ALJ's evaluation of the opinion evidence of record. *See Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) ("[T]he task of determining a claimant's residual functional capacity and ability to work rests with the administrative law judge, not a doctor.") (citing 20 C.F.R. § 404.1546(c)).

### 2. Whether substantial evidence supports the ALJ's evaluation of Ms. Spinazzola's subjective complaints.

Ms. Spinazzola argues the ALJ failed to properly evaluate her testimony. (Doc. 13, pp. 30–32). In response, the Commissioner contends the ALJ properly

considered evidence beyond Ms. Spinazzola's testimony, including assessment of the medical opinions and prior administrative findings, and substantial evidence supports his disability determination. (Doc. 17, pp. 14–17).

Social Security Ruling (SSR) 16-3p[9] and 20 C.F.R. §§ 404.1529(c), 416.929(c) provide guidance on how an ALJ is to evaluate a claimant's subjective complaints. SSR 16-3p provides that the "subjective symptom evaluation is not an examination of an individual's character," but a two-step evaluation of the evidence. SSR 16-3p, 2017 WL 5180304, at *2–3 (Oct. 25, 2017). First, the ALJ "determine[s] whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *3. Then, the ALJ "evaluate[s] the intensity and persistence of an individual's symptoms . . . and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4.

Sections 404.1529(c), 416.929(c) provide that an ALJ is required to "consider all of the available evidence from [the claimant's] medical sources and nonmedical sources about how [the] symptoms affect [the claimant]." 20

---

[9] SSRs are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990). Federal courts hearing appeals of the Commissioner's final decisions are not bound by SSRs, but they are given "great respect and deference where the statute is not clear and the legislative history offers no guidance." *B. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981).

C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). It also provides that medical opinions can be relied on when evaluating a claimant's subjective complaints. *Id.* The ALJ may not reject a claimant's subjective complaints only because the objective medical evidence does not substantiate the complaints. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). This regulation instructs that the ALJ must "carefully consider any other information [a claimant] may submit about [her] symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ may reject testimony about subjective complaints, but that rejection must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

The ALJ found Ms. Spinazzola's allegations of disabling impairments and limitations, including manipulative limitations, were not entirely consistent with the record. (Tr. 30). As stated above, Ms. Spinazzola exhibited full strength in her upper extremities, normal motor function of the upper extremities, no numbness, tingling, or weakness in her upper extremities, and a normal range of motion. (*See* Tr. 345, 397, 437, 756, 857, 862, 868, 927, 932). In addition, Dr. Christensen noted Ms. Spinazzola exhibited full strength of the upper extremities, including the areas of wrist flexion, wrist extension, finger abduction, and hand grip, her sensation was intact to light touch throughout, she could lift, carry, and handle light objects and able to perform fine motor skills such as opening doors, buttoning shirts, and manipulating a coin, and she exhibited normal range of motion in all areas of the upper

14

extremities. (Tr. 666–67, 70). Dr. Salinsky and one of the state agency medical consultants found Ms. Spinazzola had no manipulative limitations. (105, 908). Dr. Salinsky further opined Ms. Spinazzola had no lifting restrictions. (Tr. 907). However, the ALJ included both reaching (no more than occasional overhead reaching) and manipulative (no more than frequent [rather than constant] handling, fingering, and feeling bilaterally) limitations in the RFC finding. (Tr. 29); 20 C.F.R. §§ 404.1529(c)(2), (c)(4), 416.929(c)(2), (c)(4) (stating ALJ properly considers objective medical evidence as a factor in assessing intensity, persistence, and limiting effect of symptoms).

In addition, the ALJ considered Ms. Spinazzola's improvement with treatment, particularly improvement following surgery on her hands and wrists. (Tr. 382, 664). At an October 2021 examination, Dr. Pappou stated Ms. Spinazzola was "doing well" concerning carpal tunnel syndrome and had experienced improvement in terms of pain, numbness, and tingling. (Tr. 490); *See Dyer v. Barnhart*, 395 F.3d 1206, 1211–12 (11th Cir. 2005) (upholding the ALJ's subjective complaint analysis where the claimant and his medical professionals noted improvement with treatment).

The court may not "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Even when the court finds the evidence could support a different conclusion, the ALJ's decision must be

15

affirmed if it is supported by substantial evidence and based on proper legal standards. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The ALJ applied the proper legal standards, analyzed the evidence, and articulated why she did not find Ms. Spinazzola's subjective complaints consistent with the evidence. Thus, the ALJ properly evaluated Ms. Spinazzola's subjective complaints, and remand is not required.

### IV. CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED,** and the Clerk is directed to enter judgment for the Commissioner and close the file.

**ORDERED** in Tampa, Florida, on August 15, 2025.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge